**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICK LULLOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Removal from the Circuit Court of Cook |
| v. | ) | County, Illinois |
| | ) | |
| POWER SOLUTIONS INTERNATIONAL, | ) | Case No. 2021-L-010851 |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

# EXHIBIT A

## to

# NOTICE OF REMOVAL

---

 **CT Corporation**

**Service of Process Transmittal**
11/19/2021
CT Log Number 540616516

**TO:** Candace Lawber
Power Solutions International, Inc.
201 Mittel Dr
Wood Dale, IL 60191-1116

**RE:** **Process Served in Illinois**

**FOR:** Power Solutions International, Inc. (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | RICK LULLOFF vs. POWER SOLUTIONS INTERNATIONAL, INC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 2021L010851 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/19/2021 at 02:22 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air<br><br>Image SOP<br><br>Email Notification, William Buzogany Wbuzogany@psiengines.com<br><br>Email Notification, Candace Lawber candace.lawber@psiengines.com<br><br>Email Notification, Candace Lawber candace.lawber@psiengines.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604<br>866-539-8692<br>CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**          Fri, Nov 19, 2021

**Server Name:**          Sheriff Drop

| | |
|---|---|
| Entity Served | POWER SOLUTIONS INTERNATIONAL INC |
| Case Number | 2021L010851 |
| Jurisdiction | IL |



| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (12/01/20) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Rick Lulloff

_____
                        Plaintiff(s)

                v.                          Case No.  2021 L 010851

Power Solutions International, Inc.
_____          **Please Serve:**
                        Defendant(s)      **CT Corporation System**
                                          **Registered Agent for Power Solutions**
See Attached Service List                 **International, Inc.**
                                          **208 S. LaSalle Street - Suite 814**
_____          **Chicago, Illinois 60604**
                Address of Defendant(s)

Please serve as follows (check one):  ○ Certified Mail  ◉ Sheriff Service  ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE**. You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons**               **(12/01/20) CCG 0001 B**

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

Atty. No.: 54880

Pro Se 99500

Name: The Law Office of Joseph L. Ponsetto

Atty. for (if applicable):

Plaintiff

Address: 7753 Van Buren, Unit 401

City: Forest Park, Illinois 60130

State: IL   Zip: 60130

Telephone: 708-691-5995

Primary Email: jponsetto@comcast.net

Witness date _____

11/9/2021 2:48 PM IRIS Y. MARTINEZ

IRIS Y. MARTINEZ, Clerk of Court

⌐ Service by Certified Mail: _____

⌐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 2 of 3

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

### ALL SUBURBAN CASE TYPES
### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| RICK LULLOFF, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2021 L 010851 |
| | ) | |
| v. | ) | |
| | ) | |
| POWER SOLUTIONS INTERNATIONAL, | ) | **Jury Demand** |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |

## SERVICE LIST

CT CORPORATION SYSTEM
Registered Agent for Power Solutions International, Inc.
208 S. LaSalle Street
Suite 814
Chicago, IL 60604



**DIE DATE**
12/02/2021

**DOC.TYPE:** LAW
**CASE NUMBER:** 2021L010851
**DEFENDANT**                              **SERVICE INF**
POWER SOLUTIONS INTERNATIONAL INCCT CORP SY
208 S LASALLE ST
CHICAGO, IL 60604
STE 814

**ATTACHED**

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (12/01/20) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Rick Lulloff

_____
                                    Plaintiff(s)

                v.

Power Solutions International, Inc.
_____
                                    Defendant(s)

See Attached Service List

_____
                        Address of Defendant(s)

Case No.  2021 L 010851

Please Serve:
CT Corporation System
Registered Agent for Power Solutions
International, Inc.
208 S. LaSalle Street - Suite 814
Chicago, Illinois 60604

Please serve as follows (check one):  ◯ Certified Mail  ⦿ Sheriff Service  ◯ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE**. You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons** (12/01/20) CCG 0001 B

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

Atty. No.: 54880

Pro Se 99500

Name: The Law Office of Joseph L. Ponsetto

Atty. for (if applicable):

Plaintiff

Address: 7753 Van Buren, Unit 401

City: Forest Park, Illinois 60130

State: IL Zip: 60130

Telephone: 708-691-5995

Primary Email: jponsetto@comcast.net

Witness date _____

11/9/2021 2:48 PM IRIS Y. MARTINEZ

IRIS Y. MARTINEZ, Clerk of Court

⌐ Service by Certified Mail: _____

⌐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3

# GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

## CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5133

## CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5116

## COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5710

## DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6300

## DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:   (312) 325-9500

## LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5426

## PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6441

## ALL SUBURBAN CASE TYPES
### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:   (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:   (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:   (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:   (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:   (708) 232-4551

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| RICK LULLOFF, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2021 L 010851 |
| | ) | |
| v. | ) | |
| | ) | |
| POWER SOLUTIONS INTERNATIONAL, | ) | **Jury Demand** |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |

## SERVICE LIST

CT CORPORATION SYSTEM
Registered Agent for Power Solutions International, Inc.
208 S. LaSalle Street
Suite 814
Chicago, IL 60604



DOC. TYPE:        LAW
CASE NUMBER:   2021L010851
DEFENDANT
POWER SOLUTIONS INTERNATIONAL INC
208 S LASALLE ST
CHICAGO, IL 60604
STE 814

DIE DATE
12/02/2021

SERVICE INF
CT CORP SY

ATTACHED

FILED
11/5/2021 4:39 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021L010851

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

RICK LULLOFF,                                    )
                                                  )        Case No. 2021L010851
      Plaintiff,                         )                      13901148
                                                  )
      v.                                 )        Calendar
                                                  )
POWER SOLUTIONS INTERNATIONAL,                    )
INC.,                                             )
                                                  )        **Jury Demand**
      Defendant.                         )

FILED DATE: 11/5/2021 4:39 PM   2021L010851

## COMPLAINT AT LAW

NOW COMES the Plaintiff, Rick Lulloff (herein "Plaintiff" or "Lulloff") by and through

his attorney, Joseph L. Ponsetto, hereby files his Complaint against the Defendant Power

Solutions International, Inc. (herein "Defendant") and in support thereof, states as follows:

### NATURE OF ACTION

1.     The present action is brought against the Defendant Power Solutions

International, Inc. (herein "Defendant") for breach of an Executive Employment Agreement

(herein "Employment Agreement") between Lulloff and the Defendant and for violation of the

Illinois Wage Payment and Collection Act. Please see the Lulloff-PSI Employment Agreement, a

true and accurate copy of which is attached hereto as **Exhibit A**. By this action, Lulloff seeks

compensatory damages, statutory interest and reasonable attorney's fees.

### PARTIES

2.     Plaintiff is a citizen of the United States and resides in Oshkosh, Wisconsin.

3.     Defendant is a Delaware corporation with its principal/corporate office located at

201 Mittel Drive, Wood Dale. IL 60191.

FILED DATE: 11/5/2021 4:39 PM   2021L010851

## JURISDICTION AND VENUE

4.      Venue is proper in Cook County, pursuant to Section 13 of the attached Employment Agreement.

5.      Jurisdiction is proper in this Court pursuant to Section 5/2-209 of the Code of Civil Procedure, pursuant to Section 13 of the Employment Agreement and because the Defendant transacts business in the State of Illinois.

## FACTUAL ALLEGATIONS

6.      On February 10, 2014, Defendant and Lulloff entered into the Employment Agreement. Eric Cohen, Chief Operation Officer of the Defendant, executed the Employment Agreement on behalf of Defendant. Lulloff executed the Employment Agreement on February 10, 2014. The start date of the Employment Agreement is February 10, 2014.

7.      Pursuant to Section 2(D) of the Employment Agreement, the payment of an "Incentive Bonus" by the Defendant to Lulloff shall occur upon the Defendant achieving certain gross revenue milestones in the on-highway programs referenced in Section 1 of the Employment Contract.

8.      Pursuant to Section 2(D) of the Employment Agreement, "upon the Company (Defendant) achieving gross revenues of $100,000,000 from the on-highway programs, Executive (Lulloff) will receive an initial incentive bonus of $300,000" (herein "First Incentive Bonus").

9.      Pursuant to Section 2(D) of the Employment Agreement, "upon the Company (Defendant) achieving gross revenues of $250,000,000 from the on-highway programs,

2

FILED DATE: 11/5/2021 4:39 PM   2021L010851

Executive (Lulloff) will receive an additional incentive bonus of $500,000" (herein "Second Incentive Bonus").

10.    Pursuant to Section 2(D) of the Employment Agreement, "upon the Company (Defendant) achieving gross revenues of $500,000,000 from the on-highway programs, Executive (Lulloff) will receive an additional incentive bonus of $700,000" (herein "Third Incentive Bonus").

11.    On or around December 31, 2016, the First Incentive Bonus milestone of $100,000,000.00 dollars gross revenues from the on-highway programs was achieved by Defendant.

12.    On or around December of 2017, during a meeting with General Counsel William Buzogany (herein "Buzogany") and CEO John Miller (herein "Miller"), demand was made by Lulloff to the Defendant to comply with the Employment Agreement and to pay to Lulloff the First Incentive Bonus.

13.    To date, Defendant has failed to pay Lulloff the First Incentive Bonus earned consistent with Section 2(D) of the Employment Agreement.

14.    On or around December 31, 2018, the Second Incentive Bonus milestone of $250,000,000.00 dollars gross revenues from the on-highway programs was achieved by Defendant.

15.    On February 18, 2019, demand was made of the Defendant to comply with the Employment Agreement and to pay to Lulloff both the First Incentive Bonus and the Second Incentive Bonus. See February 18, 2019, demand letter, a copy of which is attached hereto as **Exhibit B**.

3

FILED DATE: 11/5/2021 4:39 PM 2021L010851

16. To date, Defendant has failed to pay Lulloff the Second Incentive Bonus earned consistent with Section 2(D) of the Employment Agreement.

17. After numerous communications and/or negotiations with various representatives of the Defendant regarding the payment of the First and Second Incentive Bonuses, on or around March 22, 2019, CEO Miller requested a final settlement proposal from Lulloff on the payment of the First and Second Incentive Bonuses. Said proposal was conveyed to Defendant from counsel for Lulloff on March 25, 2019. Please see the March 25, 2019, Email, a copy of which is attached hereto as **Exhibit C**.

18. At or around the time that CEO Miller requested the final settlement proposal, Miller informed Lulloff that if a lawsuit was filed against the Defendant seeking payment of the First and Second Incentive Bonuses, Lulloff's employment with the Defendant would be terminated.

19. On or about March 28, 2019, Lulloff was terminated from his employment by the Defendant. Please see the notice of termination, a copy of which is attached hereto as **Exhibit D**. Defendant's Notice of Termination did not state the cause for said termination of employment.

20. Pursuant to Section 7 of the Employment Agreement, because the Defendant terminated the Employment Agreement other than for reasons specified therein, Lulloff was to receive compensation being earned at the time of the termination for a period of two (2) years. **Ex. A, ¶7.**

21. Defendant has complied with Section 7 of the Employment Agreement by paying Lulloff the separation compensation for a period of two (2) years following the termination without cause.

4

FILED DATE: 11/5/2021 4:39 PM    2021L010851

22.     Pursuant to Section 2(D) of the Employment Agreement, if there is a termination of the Employment Agreement the Executive (Lulloff) will be paid a "prorate" share of the incentive bonus if the termination occurs between "milestones." **Ex. A**, ¶2(D).

23.     As of March 28, 2019, the gross revenue the from the on-highway programs was between the "milestones" of the Second and Third Incentive Bonus.

24.     On September 10, 2021, Lulloff sent a written demand letter to the Defendant seeking the sum of $1,211,206.47 which is inclusive of accrued interest and the "prorate" share of the Third Incentive Bonus. Please see the September 10, 2021, Letter, a copy of which is attached hereto as **Exhibit E**.

25.     To date, Defendant has failed to pay Lulloff the "prorate" share of the Third Incentive Bonus earned consistent with Section 2(D) of the Employment Agreement.

**COUNT I:**
**BREACH OF CONTRACT**

26.     Lulloff realleges and incorporates by reference the allegations contained in paragraphs 1 through 25 as if fully set forth herein.

27.     On or about February 10, 2014, Lulloff began working for the Defendant as Director of the Defendant's "on highway mechatronics systems division."

28.     Lulloff's employment and compensation with the Defendant was memorialized in the Employment Agreement.

29.     Lulloff executed the Employment Agreement on February 10, 2014, and Defendant executed the Employment Agreement on February 5, 2014, through the signature of Eric Cohen, CEO of the Defendant as of February of 2014.

30. On or around December 31, 2016, based on the Defendant achieving gross revenues in the on-highway programs referenced in Section 1 of the Employment Agreement of over $100,000,000, the First Incentive Bonus was vested and Defendant was required to compensate Lulloff in the amount of $300,000.

31. On or around December of 2017, Lulloff made demand of the Defendant to comply with the Employment Agreement and to pay to Lulloff the First Incentive Bonus.

32. On or around December 31, 2018, based on the Defendant achieving gross revenues in the on-highway programs referenced in Section 1 of the Employment Agreement of over $250,000,000, the Second Incentive Bonus was vested and the Defendant was required to compensate Lulloff in the amount of $500,000.

33. On February 18, 2019, through counsel Lulloff made demand of the Defendant to comply with the Employment Agreement and to pay to Lulloff both the First Incentive Bonus and the Second Incentive Bonus.

34. On March 28, 2019, Lulloff was terminated from his employment by the Defendant.

35. As of March 28, 2019, the gross revenue the from the on-highway programs was between the "milestones" of the Second and Third Incentive Bonus.

36. To date, the Defendant has not agreed to pay Lulloff the full amount due and owing for the First, Second and "prorate" share of the Third Incentive Bonus.

37. The Defendant breached the terms of the Employment Agreement by failing to pay Lulloff the full amount due and owing for the First, Second and Third Incentive Bonus.

6

FILED DATE: 11/5/2021 4:39 PM 2021L010851

38.     As a direct and proximate result of Defendant's breach of the Employment Agreement, Lulloff has sustained a loss and damages in excess of $30,000.

WHEREFORE, the Plaintiff, Rick Lulloff. prays for judgment in his favor and against the Defendant, Power Solutions International, Inc., for a sum in excess of the jurisdictional limit of $30,000, as evidence establishes, plus statutory pre-judgment and post-judgment interest, as will fairly and reasonably compensate Lulloff for the damages he sustained, plus the cost of this action.

**COUNT II:**
**VIOLATION OF THE ILLINOIS WAGE**
**AND PAYMENT COLLECTION ACT**

39.     Lulloff realleges and incorporates by reference the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

40.     At all times relevant hereto there existed in the State of Illinois an Act entitled the Wage Payment and Collection Act – 820 ILCS 115/1 et. seq. (hereafter the "Act.").

41.     Under §2 thereof (820 ILCS 115/2) Defendant is an "employer" subject to the provisions thereof by virtue of the terms of the Employment Agreement entered into between the parties hereto. **Ex. A.**

42.     Under §2 of the Act (820 ILCS § 115/2) and pursuant to the terms of the Employment Agreement, Lulloff is an "employee" and protected by the provisions of the Act including, but not limited to, §§2, 3, 4, 5, 9, 13 and 14 thereof.

43.     Pursuant to Section 2(D) of the Employment Agreement, the payment of an "Incentive Bonus" by the Defendant to Lulloff shall occur upon the Defendant achieving certain

7

gross revenue milestones in the on-highway programs referenced in Section 1 of the Employment Contract. **Ex. A**, ¶2(D).

44.     Pursuant to Section 2(D) of the Employment Agreement, "upon the Company (Defendant) achieving gross revenues $100,000,000 from the on-highway programs, Executive (Lulloff) will receive an initial incentive bonus of $300,000."

45.     Pursuant to Section 2(D) of the Employment Agreement, "upon the Company (Defendant) achieving gross revenues $250,000,000 from the on-highway programs, Executive (Lulloff) will receive an additional incentive bonus of $500,000".

46.     Pursuant to Section 2(D) of the Employment Agreement, "upon the Company (Defendant) achieving gross revenues $500,000,000 from the on-highway programs, Executive (Lulloff) will receive an additional incentive bonus of $700,000."

47.     On or around December 31, 2016, based on the Defendant achieving gross revenues in the on-highway programs referenced in Section 1 of the Employment Agreement of over $100,000,000, the First Incentive Bonus was vested and Defendant was required to compensate Lulloff in the amount of $300,000.

48.     On or around December 31, 2018, based on the Defendant achieving gross revenues in the on-highway programs referenced in Section 1 of the Employment Agreement of over $250,000,000, the Second Incentive Bonus was vested and the Defendant was required to compensate Lulloff in the amount of $500,000.

49.     On March 28, 2019, Lulloff was terminated from his employment by the Defendant.

8

FILED DATE: 11/5/2021 4:39 PM   2021L010851

FILED DATE: 1/5/2021 4:39 PM 2021L010851

50.     As of March 28, 2019, the gross revenue the from the on-highway programs was between the "milestones" of the Second and Third Incentive Bonus.

51.     To date, the Defendant has not agreed to pay Lulloff the full amount due and owing for the First, Second and "prorate" share of the Third Incentive Bonus.

52.     The refusal to compensate Lulloff pursuant to the Employment Agreement as set forth herein was not taken in accordance with the laws of the State of Illinois and this refusal violated §5 of the Act. (820 ILCS 115/5).

53.     During the relevant period set forth above, Defendant knowingly and improperly refused to fully compensate Lulloff wages.

54.     Lulloff has demanded that Defendant pays him the improperly withheld sums on numerous occasions since December of 2017. Defendant has refused, and continue to refuse, to pay Lulloff his rightful wages in violation of the Act.

55.     On September 10, 2021, Lulloff, in accordance with the provisions of 705 ILCS § 225/1, sent a written demand letter to the Defendant seeking the sum of $1,211,206.47 inclusive of interest and the "prorate" share of the Third Incentive Bonus.

56.     As of the date of the filing of this Complaint, Defendant has refused, and continue to refuse, to pay Lulloff his rightful wages in violation of the Act.

57.     At all times stated herein, Defendant's actions were knowing, willful, and done with the intention to secure for themselves the amount of the underpayment and with the intention to annoy, harass, oppress, hinder, delay or defraud Lulloff.

58.     As a direct and proximate result of Defendant's knowing and willful actions Lulloff has sustained a loss and damages in excess of $30,000.

FILED DATE: 11/5/2021 4:39 PM    2021L010851

59.    Pursuant to and in accordance with the provisions of §14 of the Act, Lulloff seeks to recover, in addition to the unpaid wage amount specified in ¶58 above an amount equal to 5% of the underpayment for each month from the date of each underpayment set forth herein until such time as judgment thereon is entered, and thereafter at the judgment rate of 9%, plus costs and attorney's fees.

WHEREFORE, Plaintiff Jeffrey Ehlers prays for judgment in his favor and against the Defendant, Power Solutions International, Inc., for a sum in excess of the jurisdictional limit of $30,000, as evidence establishes, plus statutory pre-judgment & post-judgment interest, statutory and reasonable attorney's fees and costs, 5% of the underpayment for each month from the date of each underpayment set forth herein until such time as judgment thereon is entered pursuant to Section 14 of the Act, as will fairly and reasonably compensate Ehlers for the damages sustained, plus the cost of this action.

Respectfully submitted,

RICK LULLOFF

By:    /s/Joseph L. Ponsetto

Joseph L. Ponsetto
jponsetto@comcast.net
The Law Office of Joseph L. Ponsetto
7753 Van Buren
Unit 401
Forest Park, IL 60130
(708) 691-5995
Firm ID: 54880

10

FILED DATE: 11/5/2021 4:39 PM    2021L010851

## EXECUTIVE EMPLOYMENT AGREEMENT

This Executive Employment Agreement ("Agreement") is made by and between Rick Lulloff ("Executive") and Power Solutions International, Inc., a Delaware Corporation, along with its subsidiaries and affiliates (the "Company") this 10th day of February 2014.

WHEREAS, the Company desires to employ Executive for its operations;

WHEREAS, Executive desires to be employed by Company and to perform services on behalf of Company;

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein, which the parties agree constitute good and sufficient consideration, the Company and Executive agrees as follows:

1.    **Employment and Duties**. Executive will serve as Director of Company's on-highway mechatronics systems with the primary responsibility of launching engines within the on-highway market including, (a) the PSI 8.8 liter, the GM 4.8 liter and GM 6.0 liter engine. Based on customer and market demands, the engines may be boosted and offered as NG, LP and gasoline variants.  Also, other engine opportunities may be pursued. In addition, the Executive will also be responsible for:
- working on a program to find the fastest and lowest cost path to GHG compliance for  selective on-highway engines;
- evaluating, and potentially managing a program that brings a large bore 13-15 liter gasified product line to the Company; and
- building a program to position the Company strategically as a leader in Hybrid Electric technology.

Executive shall report to Company's VP of on-highway technology. Executive shall perform Executive's duties in a conscientious, reasonable and competent manner and shall strive to promote the success and best interests of Company. Company may not relocate Executive's office away from Neenah, Wisconsin or Wood Dale, Illinois without Executive's written consent which shall not be unreasonably withheld.

2.    **Compensation**.

A.    **Annual Base Salary**. Commencing on or near February 10, 2014 Company shall provide Executive with a gross annual salary of $150,000.00, which shall be paid in equal bi-monthly installments, including taxes and benefit deductions, if any. Increases may be made to Executive's base salary in the sole discretion of Company, but no decreases in base salary may be made in Executive's base salary without the written consent of Executive.

1

FILED DATE: 11/5/2021 4:39 PM   2021L010851

B.  **Signing Bonus**.  Upon Execution of this Agreement and commencement of Executive's employment, Executive shall be entitled to a signing bonus in the amount of $30,000 (grossed up), which shall be paid in two equal installments, the first upon commencement of duties and the second at the end of three months of employment.

C.  **Covenant Not To Compete and Trade Secrets**. Upon commencement of Executive's employment, PSI shall pay Executive $20,000 (grossed up) as consideration for Executive's agreeing to be bound by the covenant not to compete and non-disclosure of confidential information contained in sections 8 & 9 herein.  Executive agrees that such payment is sufficient and that he intends to be bound by Sections 8 and 9 herein and that Company would not enter into this Agreement unless Executive was bound by Sections 8 and 9 herein.

D.  **Incentive Bonus**  Executive will be provided with an incentive bonus upon the Company achieving certain gross revenue milestones in the on-highway programs referenced above in Section 1 herein.  Upon the Company achieving gross revenues of $100,000,000.00 dollars from the on-highway programs, Executive will receive an initial incentive bonus of $300,000.00.  Upon the Company achieving gross revenues of $250,000,000.00 dollars from the on-highway programs, Executive will receive an additional $500,000.00 dollars incentive bonus.  Upon the Company achieving gross revenues of $500,000,000.00 dollars from the on-highway programs, Executive will receive an additional $700,000.00 dollars incentive bonus.  It is understood that these incentive bonuses are cumulative and in no event shall these incentive bonuses exceed $1,500,000.00 dollars without the express written approval of the Company's Board of Directors.  It is further understood and agreed that Executive shall have no further right or interest in an incentive bonus on and after termination of this Agreement for any reason. If this Agreement is terminated by Company (for reasons other than stated in Paragraph 5), Executive will be paid a prorate share of incentive bonus if between milestones at time of termination.  If there is a change of leadership from Gary Winemaster and/or Eric Cohen, Executive has the option of terminating this Agreement and will be paid a prorate share of incentive bonus if between milestones at time of termination.

The Company and Executive will work together to draft a mutually agreeable incentive bonus plan establishing the specific requirements and criteria for meeting each milestone including termination, forfeiture and other terms as shall be agreed upon by Executive and Company (the "Incentive Bonus Plan").

E.  **Discretionary Bonus**.  Separate and distinct from Section C above, Executive may receive a bonus of up to twenty-five percent (25 %) of Executive's Annual Base Salary in the sole discretion of the Company based upon Executive's performance with respect to annual targets to be established by Company's Chief Operating Officer.

2

EXHIBIT A

F. **Fringe Benefits**. Executive shall be eligible to participate in the executive benefit plans offered by the Company pursuant to the terms of the benefit plan documents, including health and pension benefits.

G. **Vacation**. Executive shall be entitled to four (4) weeks of vacation each year. Two (2) weeks of vacation may be taken in daily increments. The remaining two (2) weeks of vacation must be taken in weekly increments and must be scheduled at least two (2) weeks in advance and approved by Company's Chief Operating Officer. Unused vacation time may not be carried over from one year to the next and if not taken is forfeited.

H. **Automobile Allowance**. During the term of this Agreement, Executive shall be given an automobile allowance of up to $800/month to cover the cost of an automobile financed or leased by Executive and maintenance. Company shall cover the cost of insuring the automobile.

I. **Expense Reimbursements**. Company shall reimburse Executive for all reasonable and necessary expenses incurred by Executive in carrying out Executive's duties under this Agreement. Executive shall provide Company a quarterly itemized account of such expenses.

3. **Exclusive Services**. Executive agrees he shall devote his entire time, skill, ability, attention and best efforts to the faithful performance of his position and may not be employed in or serve in any capacity by any other business except as approved in advance in writing by the Company's Chief Operating Officer. To the extent it does not interfere with Executive's duties for Company, Executive may participate in the winding-down or sale of Renewegy and research and development at the Neenah R&D center including support of the existing product warranty maintenance.

4. **Term**. Executive will commence employment on or near February 10, 2014 and serve until January 31, 2021 ("Initial Term"). Following the Initial Term, this Agreement will automatically renew for successive one year installments unless prior to February 1, 2021 Executive or Company provides ninety (90) days' prior written notice of intent not to renew this Agreement. Thereafter, annual renewal or termination of this Agreement shall be in accord with the terms of the preceding sentence.

5. **Termination**. This Agreement may be terminated by any of the following methods:

A. The written mutual agreement of the parties.

B. Company may terminate this Agreement for Cause by providing written notice of termination to Executive. Cause for termination shall be limited to the following:

3

EXHIBIT A

FILED DATE: 11/5/2021 4:39 PM    2021L010851

FILED DATE: 11/5/2021 4:39 PM    2021L010851

1.    Executive's habitual intoxication or drug addiction or failure to pass a drug test;

2.    Executive's conviction of a felony;

3.    Executive's willful failure or inability to perform Executive's duties under this Agreement. To the extent that a willful failure or inability to perform can be cured, Executive shall be given written notice of the failure or inability to perform and shall be given 14 days to cure the failure or inability to perform. Should the willful failure or inability to perform reoccur, Executive will not be given another opportunity to cure hereunder, without the express written consent of the Chief Operating Officer;

4.    Executive taking any action which in any material way impairs the reputation, goodwill or business position of Company; or

C. Executive's death. In such event, Executive and his heirs shall not be entitled to any compensation other than Executive's owed expense reimbursements and/or compensation earned and accrued or vested at the time of Executive's death, and will be paid a prorate share of incentive bonus as described in section 2D. Other monetary obligations of Company to Executive as set forth in this Agreement shall terminate.

D. Company shall have the right to terminate this Agreement, after giving to Executive ten (10) days' written notice of its intention to do so, should Executive, because of "total and permanent disability," be unable to perform the duties required of Executive under this Agreement for a period of six (6) consecutive months. The term "total and permanent disability" shall mean the existence of a permanent mental or physical disability, determined by a physician in accordance with generally accepted medical principles, which renders Executive unable to perform any material obligations or terms contained in this Agreement.

6.    **Notice of Termination**. Any notice of termination by Company shall be communicated in writing to Executive.

7.    **Severance Pay**. If Company terminates this Agreement for any reason other than the written mutual agreement of the parties, Executive's death, Executive's total and permanent disability, or Cause, Company shall pay Executive's compensation being earned at the time of termination for a period of two (2) years.

4

EXHIBIT A

FILED DATE: 11/5/2021 4:39 PM 2021L010851

8.     **Covenant Not to Compete and Not to Solicit**. The services to be rendered pursuant to this Agreement by Executive are special, unique and of extraordinary character. Executive agrees that without the prior written consent of Company's Chief Operating Officer, during the term of this Agreement and for two (2) years after the termination of this Agreement for any reason, neither Executive nor any person or entity controlled by Executive will own, manage, operate, control, be employed or engaged by, lend to, or engage in the following, in any manner, directly or indirectly, whether or not for compensation, including in the capacity of a sole proprietor or a shareholder, officer, director, member, partner, executive, agent, consultant, contractor of, any person, firm, corporation or other organization or entity that designs, develops, sells, distributes, provides or otherwise promotes the design, development, sale, distribution or provision of products or services in the industrial gas and alternative fuel engines to the industrial, construction and agricultural equipment markets or industries, the spark ignition markets and industries, or on or off highway engines markets or industries, or is in any other way in competition with Company.

Further, during the time period aforesaid, neither Executive nor any person or entity controlled by Executive will, directly or indirectly, solicit existing or prospective customers, suppliers, or other business relations of Company or any of their affiliates, executives, consultants, or agents for sales of competitive products or services or for the purpose of terminating, reducing or altering their business or employment relationships with Company or any of its affiliates. It is mutually recognized and agreed that the products or services of Company and its affiliates are to be sold or provided throughout the United States of America and worldwide and, therefore, the scope and the duration of this covenant is reasonable in light of the circumstances, and required for the protection of Company and its business.

9.     **Trade Secrets and Confidential Information**. Executive will not, except in connection with this Agreement, and solely for the benefit of Company, directly or indirectly, for his own benefit or the benefit of any third-party, during the term hereof and at any time subsequent to the termination of the Agreement for whatever reason, use or disclose to any other person, corporation or other entity any information of a confidential or proprietary nature belonging to or provided to Executive by Company or relating to Company's business. Such information shall include but not be limited to trade secrets (as defined below), files, records, data, documents, processes and procedures, specifications, methods of operation and other business methods, inventions, techniques and know-how, formulae, experimental research or developmental work, plans, policies, lists of prospective, past or current customers or clients, price lists, lists of the names and addresses of Executives, suppliers or representatives, or other matters of any kind or description relating to the products, services, suppliers, matters of any kind or description relating to the products, services, suppliers, customers, sales or businesses of Company, unless said information has already become public knowledge, not via Executive, or unless Executive is compelled to release it by governmental process.  For purposes hereof, "trade secret" means

5

information that is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

Regardless of the form or medium in which contained or embodied, including electronic media, all records, files, writings, drawings, inventions, improvements, techniques, procedures, discovery, documents, equipment and the like relating to Company's business that Executive shall prepare, use, conceive, discover, develop, construct, observe, whether alone or in conjunction with others, shall at all times be and remain the sole property of Company. Upon termination of this Agreement for any reason, Executive shall return to the possession of the Company any items of that nature and any copies thereof that he may have in his possession.

10. **Property of Company**. Executive agrees that all confidential information, in whatever form, shall remain the sole property of Company. Executive agrees to deliver all Company property to Company upon the termination of this Agreement for any reason or demand for return of the same by Company.

11. **Work Product**. If, during Executive's service with Company, Executive invents, designs, or prepares or produces, in whole or in part, any work product derived from Company's confidential information or other property, such work product shall remain the property of Company.

12. **Irreparable Harm**. Executive agrees that irreparable injury will result to Company and its related businesses and property in the event of a breach or threatened breach by Executive of the covenants contained in paragraphs 8, 9, and 10 of this Agreement. Such injury would be difficult if not impossible to ascertain. In the event of such a breach, in addition to any remedy at law, Company will be entitled to seek and obtain temporary, preliminary and permanent injunctive relief.

13. **Governing Law and Jurisdiction**. This Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois, without regard to its conflicts of law provisions. It is agreed that both parties equally participated in drafting this Agreement. Any action to enforce this Agreement shall be brought in a court located Cook County, Illinois.

14. **Amendments**. No modification, amendment or waiver of any of the provisions of this Agreement shall be effective unless in writing and signed by the parties to this Agreement.

15. **Non-Waiver**. The Company's failure to insist upon Executive's strict compliance with any provision of this Agreement shall not be deemed a waiver of such provision or of any other provision in this Agreement.

6

EXHIBIT A

FILED DATE: 11/5/2021 4:39 PM    2021L010851

16.    **Assignment**. This Agreement is for the benefit of and may be enforced by the Company, its successors and assigns. This Agreement may not be assigned by Executive to any other person or to any entity without the express written consent of the Chief Executive Officer of the Company.

17.    **Notices**. All notices to be given under this Agreement shall be in writing and shall be sent to the following addresses, or to such other addresses as either party may designate in writing to the other, by registered mail, postage prepaid.

> If to Executive:
> Rick Lulloff
>
> If to Company:
> Eric Cohen
> 201 Mittel Drive
> Wood Dale, IL 60191

With a copy to:

> Director of Human Resources, PSI
> 101 Mittel Drive
> Wood Dale, IL 60191

18.    **Survivability.** Paragraphs 8 through 13 of this Agreement shall survive, and be enforceable after, the termination of Executive's employment with the Company for any reason.

19.    **Severability.** The provisions of this Agreement shall be severable. The unenforceability or invalidity of any one or more provisions, clauses, or sentences hereof shall not render any other provision, clause, or sentence herein contained unenforceable or invalid. The portion of the Agreement which is not invalid or unenforceable shall be considered enforceable and binding on the parties and the invalid or unenforceable provisions, clauses, or sentences shall be deemed excised, modified, or restricted to the extent necessary to render the same valid and enforceable, and this Agreement shall be construed as if such invalid or unenforceable provisions, clauses, or sentence were omitted

20.    **Counterparts and Signatures**. This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail will have the same effect as the original signature.

7

EXHIBIT A

FILED DATE: 11/5/2021 4:39 PM    2021L010851

21.    <u>Headings</u>. The section headings of this Agreement have been inserted for convenience only and shall not modify or affect the construction or interpretation of any provision of this Agreement.

22.    <u>Entire Agreement</u>. This instrument contains the entire agreement of the parties.  It supersedes any and all other agreements or understandings either oral or written between the parties, with respect to the subject matter hereof.  It may not be changed or contradicted in any respect except in a subsequent written agreement signed by the Executive and Company's Chief Executive Officer.

POWER SOLUTIONS INTERNATIONAL, INC.

By:    Eric Cohen

Its:    Chief Operating Officer

Date:    _____2/5/14_____

Rick Lulloff

Date:  _2/10/2014_

8

EXHIBIT A

FILED DATE: 11/5/2021 4:39 PM   2021L010851

# *BURKE BURNS & PINELLI, LTD.*

### *ATTORNEYS AT LAW*
### *SUITE 4300*
### *THREE FIRST NATIONAL PLAZA*
### *CHICAGO, ILLINOIS 60602-4229*
*Telephone (312) 541-8600   Facsimile (312) 541-8603*
*Website www.bbp-chicago.com*

*EDWARD J. BURKE*
*MARY PATRICIA BURNS*
*VINCENT D. PINELLI*
*STEPHEN F. WELCOME*
*ELLEN B. EPSTEIN*
*DONALD F. HARMON*

*MARK S. JAMIL*
*CHRISTOPHER J. HALES*
*LARISA L. ELIZONDO*
*MARTIN T. BURNS*
*SARAH A. BOECKMAN*
*SUSAN D. STEFFY*

February 18, 2019

<u>*Via E-Mail & Overnight Mail*</u>
Power Solutions International, Inc.
Attn: William A. Buzogany, General Counsel
Attn: Colleen G. DeRosa, Outside Counsel
201 Mittel Drive
Wood Dale, Illinois 60191
Wbuzogany@psiengines.com
Colleen.derosa@ogletree.com

RE:     *Demand for Required Incentive Bonus Payments Pursuant to 2014 Employment Agreements Between Power Solutions International, Inc. and Jeffrey Ehlers and Rick Lulloff*

Dear Mr. Buzogany:

As you know, my clients, Mr. Jeffrey Ehlers and Mr. Rick Lulloff, have been patient with Power Solutions International, Inc. ("PSI") in trying to reach an agreement with PSI relative to the incentive bonus payments owed to them pursuant to their 2014 employment agreements.

As of December 31, 2016, the first incentive bonus milestone of $100,000,000.00 dollars gross revenues from the on-highway programs was achieved (Attachment A). PSI has failed to pay my clients the incentive monies earned consistent with that first incentive bonus milestone.

As of December 31, 2018, the second incentive bonus milestone of $250,000,000.00 dollars gross revenues from the on-highway programs was achieved (Attachment A). PSI has similarly failed to pay my clients the incentive monies earned consistent with that second incentive bonus milestone.

Consistent with the requirements of the 2014 employment agreements, my clients hereby demand payment for achieving the first and second milestones, as well as interest for PSI's failure to distribute payments (Attachment B).

## EXHIBIT B




***BURKE BURNS & PINELLI, LTD.***

FILED DATE: 11/5/2021 4:39 PM    2021L010851

As noted to you and Ms. DeRosa on several occasions, my clients would prefer to resolve this situation without litigation but are prepared to take whatever action necessary to receive the payments required by their employment contracts.

Please share this correspondence with the Board of Directors of PSI and respond in writing with respect to PSI's position no later than March 15th, 2019, to enable my clients to take appropriate legal action.

Very truly yours,

**Burke Burns & Pinelli, Ltd.**

Sarah A. Boeckman

Enclosures.

CC: Mr. Jeffrey Ehlers and Mr. Rick Lulloff

EXHIBIT B

*BURKE BURNS & PINELLI, LTD.*

FILED DATE: 11/5/2021 4:39 PM   2021L010851

Attachment A

GROSS REVENUES FROM ON-HIGHWAY PROGRAMS

Estimated growth rate used for forecasting out-years:        25%

| Revenue Stream | 2015A | 2016A | 2017A | 2018A | 2019F | 2020F |
|---|---|---|---|---|---|---|
| Revenue | $ 49,961,743 | $ 59,576,180 | $ 63,866,536 | $ 105,991,417 | $ 132,489,271 | $ 165,611,589 |
| Gross revenue | $ 49,961,743 | $ 109,537,923 | $ 173,404,459 | $ 279,395,876 | $ 411,885,147 | $ 577,496,736 |
| | | achieved | | achieved | | anticipating |
| | | Tranche 1 | | Tranche 2 | | Tranche 3 |
| | | 12/31/2016 | | 12/31/2018 | | 12/31/2020 |

EXHIBIT B

*BURKE BURNS & PINELLI, LTD.*

FILED DATE: 11/5/2021 4:39 PM   2021L010851

Attachment B

| Description | Stock Market Barometer (VFINX) | Mr. Ehlers | Mr. Lulloff | Rationale |
|---|---|---|---|---|
| Tranche 1 (earned 12/31/2016) | | $600,000 | $300,000 | per 2014 contracts on a gross (*cummulative*) basis |
| 2017 Interest on Tranch 1 (Feb-Dec 2017) | 21.67% | $119,185 | $59,593 | per Vanguard VFINX fund 2017 as barometer |
| 2018 Interest on Tranch 1 (Jan-Dec 2018) | -4.52% | -$32,507 | -$16,254 | per Vanguard VFINX fund 2018 as barometer |
| Tranche 2 (earned 12/31/2018) | | $1,000,000 | $500,000 | per 2014 contracts on a gross (*cummulative*) basis |
| 2019 interest on Tranche 1&2 | N/A | $0 | $0 | will begin accumulating 3/15/2019 if not paid |
| Lawyers fees to date | | $5,000 | $5,000 | |
| **Total owed by PSI:** | | **$1,691,678** | **$848,339** | |

EXHIBIT B

FILED DATE: 11/5/2021 4:39 PM    2021L010851

| | |
|---|---|
| **From:** | Sarah A. Boeckman |
| **To:** | "DeRosa, Colleen G." |
| **Subject:** | RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267] |
| **Date:** | Monday, March 25, 2019 10:50:00 AM |

Good Morning Colleen,

Thank you for your e-mail. I attempted to call you this morning and I indicated in my voicemail I would be sending you an e-mail detailing the discussions I've had with my clients with respect to a possible settlement with PSI.

In my discussion with my clients, Mr. Ehlers indicated he met with Mr. Miller on Friday morning and Mr. Miller indicated that he was negotiating on behalf of PSI and was interested in "terminating the 2014 agreements with a lump sum settlement payment" to enable PSI and my clients to "start over" as at-will employees at PSI. Mr. Ehlers also indicated that Mr. Miller stated that if my clients initiate litigation against PSI for the commission payments they allege are due and owing under the 2014 agreements, PSI will terminate Mr. Ehlers and Mr. Lulloff. Lastly, Mr. Ehlers stated that Mr. Miller complimented Mr. Ehlers and Mr. Lulloff for doing an "exemplary job" keeping the ongoing commission dispute separate and apart from their daily work at PSI.

Consistent with Mr. Ehler's discussion with Mr. Miller and our prior discussions, **my clients are willing to negotiate the commissions they allege are due and owing for Tranche 2 under the 2014 agreements only in the event that PSI is willing to pay my clients the commissions due and owing for Tranche 1 within 90 days.** That is consistent with Mr. Miller's request to settle this matter for a lump sum settlement payment.

With respect to the 2014 agreements and Mr. Miller's desire to have my clients "start over" as at-will employees, it is necessary to terminate the 2014 agreements. As you likely know, the agreements provide that both Mr. Ehlers and Mr. Lulloff are entitled to two years of compensation for "severance payment" in the event PSI terminates the agreements for any reason other than the mutual agreement of the parties, their respective deaths or disabilities or for cause. As such, to "start over" as at-will employees per the direction of Mr. Miller, my clients are entitled to two years of compensation under the 2014 agreements. My clients are willing to consider walking away from the commissions due and owing under Tranche 2 in consideration for the severance payments due and owing under the 2014 agreements. Such "termination without cause" from the 2014 agreements is with the understanding that Mr. Ehlers and Mr. Lulloff could continue to be employed at PSI, if agreed by the parties, as at-will employees entitled to the normal KPI bonuses available to similarly situated employees. Such severance payments under the 2014 agreements would be paid in addition to any salary that PSI would be paying my clients as at-will employees if PSI choose to continue their employment at the company following the "termination without cause" from the 2014 agreements. In my opinion, this is consistent with PSI's current position as Mr. Miller has indicated that PSI would terminate my clients in the event they were to pursue litigation against PSI for the commissions they allege are due and owing under the 2014 agreements. Ultimately, it saves the parties from the litigation while maintaining both of our clients current respective positions with respect to settlement and termination under the 2014 agreements.

**EXHIBIT C**

FILED DATE: 11/5/2021 4:39 PM    2021L010851

The 2014 agreements are silent with respect to the structure of the 2 years of compensation or "severance" payments and I believe we could negotiate in good faith those terms that are consistent with your client's liquidity concerns and current position on settlement. However, in order to move forward on discussing those terms, we need resolution with respect to PSI's position on paying the commissions due and owing under Tranche 1 within 90 days.

Please do not hesitate to reach out if you'd like to discuss. Thank you in advance.

Best,
Sarah

**From:** DeRosa, Colleen G. [mailto:colleen.derosa@ogletree.com]
**Sent:** Friday, March 22, 2019 3:17 PM
**To:** Sarah A. Boeckman <sboeckman@bbp-chicago.com>
**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Confidential Settlement Communication under Rule 408

Sarah,
I understand Mr. Ehlers spoke with John Miller today and they agreed that your clients will be providing PSI with a comprehensive proposal no later than noon on Monday. Based on their discussion, your clients' proposal is going to provide a compromise amount on Tranche 1 & 2 – meaning less than the total amount they claim and PSI disputes they are owed under the 2014 agreement – and the terms of a new employment agreement that will resolve all outstanding issues. This is intended to be a fulsome, long-term proposal that will resolve all issues and allow everyone to move forward.

It is also important to give you some context for negotiations. PSI is having liquidity issues and simply cannot make large lump sum payments in 90 days or a comparable timeframe. The parties are more likely to reach an understanding if your clients take that into account.

I look forward to hearing from you on Monday morning. If you'd like to discuss, please let me know.

Kind regards,
Colleen
**Colleen G. DeRosa | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
155 North Wacker Drive, Suite 4300 | Chicago, IL 60606 | Telephone: 312-558-3028 | Fax: 312-807-3619
colleen.derosa@ogletree.com | www.ogletree.com | Bio

**From:** Sarah A. Boeckman <sboeckman@bbp-chicago.com>
**Sent:** Thursday, March 21, 2019 9:15 AM
**To:** DeRosa, Colleen G. <Colleen.DeRosa@ogletreedeakins.com>
**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Hi Colleen,

**EXHIBIT C**

FILED DATE: 11/5/2021 4:39 PM    2021L010851

Thanks for your March 19th e-mail noting that PSI is considering the Tranche 1 payments within 90 days. My clients look forward to receiving a response from PSI on that issue. As we've discussed, my clients are unwilling to consider any type of settlement with respect to their February 18, 2019 demand letter unless PSI is willing to pay the Tranche 1 payments within 90 days. With respect to Tranche 2, my clients are open to considering PSI's position on the commission payments they allege are owed under Tranche 2 and request that PSI present its proposal with respect to the Tranche 2 payments. That being said, my clients are adamant that the payments under Tranche 2 would need to be paid in a similar fashion as to Tranche 1 (within 90 days) and they will not consider re-entering negotiations under the October 2018 agreements.

Please do not hesitate to let me know if you'd like to discuss or if you have an update from PSI.

Best,
Sarah

**From:** DeRosa, Colleen G. [mailto:colleen.derosa@ogletree.com]
**Sent:** Thursday, March 21, 2019 7:58 AM
**To:** Sarah A. Boeckman <sboeckman@bbp-chicago.com>
**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Sarah,
Following up on my email below, PSI needs to know your clients' proposal for "Tranche 2" by end of day today. I look forward to hearing from you. Thank you.
**Colleen G. DeRosa | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
155 North Wacker Drive, Suite 4300 | Chicago, IL 60606 | Telephone: 312-558-3028 | Fax: 312-807-3619
colleen.derosa@ogletree.com | www.ogletree.com | Bio

**From:** DeRosa, Colleen G.
**Sent:** Tuesday, March 19, 2019 1:17 PM
**To:** 'Sarah A. Boeckman' <sboeckman@bbp-chicago.com>
**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Confidential Settlement Communication under Rule 408

Sarah,

Thank you for your response of March 14, 2019. I left you a voicemail and I'm following up here. PSI's past few attempts at resolution have been wholly rejected by your clients. But you state below that your clients are willing to discuss a potential settlement regarding the commissions they claim they are owed under "Tranche 2." Understanding that your clients are demanding the $600/$300k lump sum payments within 90 days – which PSI is considering – PSI is trying in good faith to come to a resolution if one can be reached here. To see if that is possible, PSI needs to know your clients' proposal for the commissions they claim they are owed under "Tranche 2." Please let me know as soon as possible.

**EXHIBIT C**

FILED DATE: 11/5/2021 4:39 PM 2021L010851

Also, just for the sake of clarity, I want to mention that PSI's settlement offer of March 14, 2019, did not revert wholesale to its position in the October 2018 agreement as you state below. PSI tried to meet your clients' demands for the $600k/$300k payments, and re-offer the other terms of the October 2018 agreement. If that is different from what you understood from my March 14, 2019 email, let's discuss to make sure we're on the same page.

I look forward to hearing from you. If you'd prefer to talk by phone, my best number today is 847-308-9661. Thank you.

**Colleen G. DeRosa | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
155 North Wacker Drive, Suite 4400 | Chicago, IL 60606 | Telephone: 312-558-3028 | Fax: 312-807-3619
colleen.derosa@ogletree.com | www.ogletree.com | Bio

**From:** Sarah A. Boeckman <sboeckman@bbp-chicago.com>
**Sent:** Thursday, March 14, 2019 6:17 PM
**To:** DeRosa, Colleen G. <Colleen.DeRosa@ogletreedeakins.com>
**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Good Evening Colleen,

Thank you for your message and for your assistance in trying to resolve this matter. I have discussed PSI's settlement offer with my clients. **Consistent with the direction from my clients, please let this e-mail serve as my client's formal rejection of the offer you sent on behalf of PSI.** My clients continue to maintain their position that PSI is responsible for paying them the commissions due and owing for "Tranche 1" and "Tranche 2" consistent with the requirements of the 2014 employment agreements entered into between my clients and PSI. Such position was articulated to PSI in a demand letter of February 18, 2019, and, as you know, my clients have maintained this position for over a year of good faith negotiations with PSI.

Contrary to your e-mail, the offer you sent on behalf of PSI is NOT consistent with our discussion and my e-mail below. We did not discuss an installment plan or the fact that such payments for "Tranche 1" would be subject to Sections 3(d)(i) and (ii) of the October, 2018 agreements (please note that I believe you meant to state 4(d)(i) and 4(d)(ii) in the case of Mr. Ehlers and 4(e)(i) and (ii) in the case of Mr. Lulloff). As you and PSI are aware, the October, 2018 agreements were completely rejected by my clients. Further, when we spoke prior to the PSI Board meeting, I indicated that my clients had no interest in returning to the negotiations or terms involving either the May, 2018 agreements or the October, 2018 agreements. PSI's settlement offer simply reverts to its position in the October, 2018 agreement. As I've noted, that is unacceptable to my clients.

My clients are willing to discuss a potential settlement regarding the commissions they claim are owed under "Tranche 2". However, as we've discussed, they are only willing to enter such settlement discussions if PSI commits to paying them the commissions due and owing under "Tranche 1" in a reasonable time-frame not to exceed ninety (90) days and without any of the limitations indicated in your e-mail.

You state that your e-mail represents PSI's best and final offer. Unless I hear differently from you,

**EXHIBIT C**

FILED DATE: 11/5/2021 4:39 PM   2021L010851

we will assume your e-mail represents PSI's formal response to our February 18, 2019 demand letter.

Best,
Sarah

**From:** DeRosa, Colleen G. [mailto:colleen.derosa@ogletree.com]
**Sent:** Thursday, March 14, 2019 9:06 AM
**To:** Sarah A. Boeckman <sboeckman@bbp-chicago.com>
**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Confidential Settlement Communication under Rule 408

Sarah,

PSI is willing to pay your clients the commissions they claim to be owed under "Tranche 1," – the $600,000 to Mr. Ehlers and $300,000 to Mr. Lulloff – in installments the amounts and timing of which the parties negotiate and mutually agree to, so long as Messrs. Ehlers and Lulloff accept the remaining terms of the October 2018 agreements.  To be clear, the $600,000 and $300,000 payments, respectively, were subject to Sections  3(d)(i) and (ii) in the "Incentive Bonus" section of the October 2018 agreements.  Those two provisions will be revised as needed to address the installments based on the parties' negotiations but all other terms in the proposed October 2018 agreements will stand.

This offer gives your clients what they demanded before they would consider a new agreement, per your email below and our phone call last Friday, in exchange for a new agreement that resolves the ongoing dispute over incentive bonuses, provides a full and fair opportunity to earn incentive bonuses under detailed, enforceable terms, and allows them to move forward without the time, expense, and stress of litigating against their employer.

This is PSI's best and final offer, and it will expire tonight at midnight.  If you would like to discuss any questions, please let me know.  Thank you for your efforts and I look forward to hearing from you.
**Colleen G. DeRosa | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
155 North Wacker Drive, Suite 4300 | Chicago, IL 60606 | Telephone: 312-558-3028 | Fax: 312-807-3619
colleen.derosa@ogletree.com | www.ogletree.com | Bio

**From:** DeRosa, Colleen G.
**Sent:** Tuesday, March 12, 2019 6:30 PM
**To:** 'Sarah A. Boeckman' <sboeckman@bbp-chicago.com>
**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Confidential Settlement Communication under Rule 408

Hi Sarah,
I was able to catch up with in-house counsel today, but they need to discuss internally.  I don't think

**EXHIBIT C**

FILED DATE: 11/5/2021 4:39 PM    2021L010851

we need anything in writing from you. I will let you know when I have more information, which I hope will be later this week. Thank you.

**Colleen G. DeRosa | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
155 North Wacker Drive, Suite 4300 | Chicago, IL 60606 | Telephone: 312-558-3028 | Fax: 312-807-3619
colleen.derosa@ogletree.com | www.ogletree.com | Bio

**From:** Sarah A. Boeckman <sboeckman@bbp-chicago.com>
**Sent:** Tuesday, March 12, 2019 5:09 AM
**To:** DeRosa, Colleen G. <Colleen.DeRosa@ogletreedeakins.com>
**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Hi Colleen,

Thank you for your time on our telephone call on Friday to discuss our respective client's position regarding whether a settlement is possible. Consistent with that discussion, you indicated you were planning on talking to the appropriate individuals at PSI with respect to my client's position (specifically in reference to the commissions alleged by clients under "Tranche 1"). Please let me know if you need anything in writing on behalf of my clients to facilitate or assist in that discussion with PSI representatives.

Thank you.

Best,
Sarah

**From:** DeRosa, Colleen G. [mailto:colleen.derosa@ogletree.com]
**Sent:** Friday, March 8, 2019 10:44 AM
**To:** Sarah A. Boeckman <sboeckman@bbp-chicago.com>
**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Hi Sarah,
Yes, 1 p.m. Central works for me. Thanks.

**Colleen G. DeRosa | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
155 North Wacker Drive, Suite 4300 | Chicago, IL 60606 | Telephone: 312-558-3028 | Fax: 312-807-3619
colleen.derosa@ogletree.com | www.ogletree.com | Bio

**From:** Sarah A. Boeckman <sboeckman@bbp-chicago.com>
**Sent:** Friday, March 8, 2019 10:16 AM
**To:** DeRosa, Colleen G. <Colleen.DeRosa@ogletreedeakins.com>
**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Hi Colleen,

Just checking-in to see if you're available at 1 o'clock this afternoon to discuss.

**EXHIBIT C**

FILED DATE: 11/5/2021 4:39 PM    2021L010851

Thanks,
Sarah

**From:** Sarah A. Boeckman
**Sent:** Thursday, March 7, 2019 6:55 PM
**To:** DeRosa, Colleen G. <colleen.derosa@ogletree.com>
**Subject:** Re: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Hi Colleen,

Thank you for your message. Are you available tomorrow at 1 o'clock (CST)? Let me know if that works for your schedule and the best number to reach you.

Safe travels!

Best,
Sarah

Sent from my iPhone

On Mar 7, 2019, at 1:30 PM, DeRosa, Colleen G. <colleen.derosa@ogletree.com> wrote:

Confidential Communication Subject to Rule 408

Sarah,
I just tried calling and left you a voicemail. As I will be traveling later today, I am sending this email to follow up. I will be available anytime tomorrow to discuss by phone. I understand that Mr. Ehlers had a conversation with PSI's CEO, John Miller, asking for a meeting to work out the parties' differences. PSI is amenable to taking one last shot at resolving this dispute and would like to schedule a meeting next Wednesday (3/13) or Thursday (3/14). Please let me know which day works.

Kind regards,
Colleen

**Colleen G. DeRosa | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
155 North Wacker Drive, Suite 4300 | Chicago, IL 60606 | Telephone: 312-558-3028 | Fax: 312-807-3619
colleen.derosa@ogletree.com | www.ogletree.com | Bio

**From:** Sarah A. Boeckman <sboeckman@bbp-chicago.com>
**Sent:** Friday, March 1, 2019 5:27 PM
**To:** DeRosa, Colleen G. <Colleen.DeRosa@ogletreedeakins.com>

**EXHIBIT C**

FILED DATE: 11/5/2021 4:39 PM    2021L010851

**Subject:** RE: Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Hi Colleen,

Thank you for your message and I apologize that I was unable to call you at 11:30 AM but I've been stuck in meetings all afternoon and I believed our original call this morning and my e-mail provided enough detail with respect to my client's position.

Consistent with our discussion this morning, my clients stand by the representations made in the February 18, 2019 correspondence to both you and PSI's General Counsel, Mr. William A. Buzogany. As you know, after requesting their earned commissions in early 2018, my clients negotiated new employment agreements in good faith on or around May, 2018, per the request of PSI. Those draft contracts were rescinded by Mr. Buzogany because of concerns raised by PSI's Board. Two or three months later, PSI requested an opportunity to re-negotiate the May, 2018 agreements that resulted in the October, 2018 agreements that were wholly unsatisfactory to my clients for a multitude of reasons. As you know, those revisions significantly altered the commission structure currently provided in the 2014 agreements entered into between PSI and my clients. The October, 2018 agreements also significantly alter the commission structure in the May, 2018 agreements negotiated between PSI and my clients.

You are correct that my clients are now unwilling to compromise in their position that PSI owes them the commissions outlined in the February 18, 2019 correspondence consistent with the terms of the 2014 agreements. I understand your position that PSI has "no fear of litigating and vigorously defending itself to the end of the road." My clients are unwilling to engage in yet another series of negotiations after over a year of working with PSI in good faith toward a resolution of this matter. The February 18, 2019 correspondence is quite simply a demand for PSI to honor the 2014 agreements. As I noted on the phone this morning, my clients are planning on initiating litigation in the event PSI fails to honor the 2014 agreements as outlined in the February 18, 2019 correspondence. I do not mean for that to be a threat. Instead, I simply wanted you to have the benefit of our intended next steps for purposes of the Board's discussion.

I look forward to hearing PSI's position with respect to our February 18, 2019 correspondence so we can take the appropriate next steps. I am not sure a phone call is necessary but if you'd like to discuss this matter in greater detail, please do not hesitate to let me know what time you are available on Monday.

**EXHIBIT C**

FILED DATE: 11/5/2021 4:39 PM   2021L010851

Best,
Sarah

**From:** DeRosa, Colleen G. [mailto:colleen.derosa@ogletree.com]
**Sent:** Friday, March 1, 2019 5:09 PM
**To:** Sarah A. Boeckman <sboeckman@bbp-chicago.com>
**Subject:** Ehlers/Lulloff and PSI [ODNSS-OGL.FID5407267]

Confidential Communication Subject to Rule 408

Sarah,
Thank you for your time on the phone this morning. As I said, I called
you to explore options that your clients might consider at this time to
resolve their dispute with PSI regarding incentive compensation they
claim they are owed. You explained that Messrs. Ehlers and Lulloff
understand that PSI disagrees with their position, but they will not
entertain negotiating a new agreement, severing their employment, or
compromising on what they claim they are owed. I asked if they would
consider revisiting the May 2018 proposed agreement, and while you
did not know the answer during our call, you followed up via email
today stating that they will not entertain that option either. You
offered to provide additional detail surrounding that, and I asked you
to call me back, but I have not yet heard from you. If you believe any of
this is incorrect, please let me know.

In sum, your clients rejected PSI's proposed revised agreements
outright and without explanation in November 2018, and resurfaced
three months later in February 2019, as if no good faith progress had
ever been made toward resolving this dispute, and again threatened
litigation. Based on our discussion this morning, they will not entertain
any compromise. As you probably know, PSI has no fear of litigating
and vigorously defending itself to the end of the road. At this point, I
see only one way for to avoid litigation, and that is for your clients to
reconsider entering into the version of the agreement that I sent you
on October 25, 2018, or similar terms.

Please tell me know whether your clients will enter into the October
25, 2018 version of the agreement, or tell me the terms under which
they will enter into a new agreement. I need to hear from you by
Monday so that PSI can take appropriate action to defend itself. If you
wish to discuss, I'm generally available Monday.

Kind regards,
Colleen

**EXHIBIT C**

**Colleen G. DeRosa | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
155 North Wacker Drive, Suite 4300 | Chicago, IL 60606 | Telephone: 312-558-3028 | Fax: 312-807-3619
colleen.derosa@ogletree.com | www.ogletree.com | Bio

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

FILED DATE: 11/5/2021 4:39 PM   2021L010851

EXHIBIT C

THE LAW OFFICE OF

# JOSEPH L. PONSETTO

7753 VAN BUREN, UNIT 401                                    708 691 5995
FOREST PARK, IL 60130                                jponsetto@comcast.net

FILED DATE: 11/5/2021 4:39 PM   2021L010851

September 10, 2021

*Via E-Mail*
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Attn: Colleen G. DeRosa, Counsel for Power Solutions International, Inc.
155 North Wacker Drive
Suite 4300
Chicago, IL 60606
colleen.derosa@ogletree.com

RE:   *Employment Agreement Between Power Solutions International, Inc. and*
      *Rick Lulloff*

Dear Ms. DeRosa:

This demand is made pursuant to and in accordance with the requirements of 705 ILCS § 225/1 and 820 ILCS § 115/1 et seq. for wages due owning our client, Rick Lulloff. As you are aware, we claim that your client, Power Solutions International, Inc. failed to pay Mr. Lulloff for the full amount of wages and compensate due him pursuant to Section 2(D) of the Executive Employment Agreement, dated February 10, 2014, between Lulloff and Power Solutions International, Inc ("Employment Agreement").

As allowed under §2 of the Illinois Wage Payment and Collection Act, we will be seeking to hold Power Solutions International, Inc., along with any individual decisionmakers who knowingly permitted PSI's Wage Act violation, as responsible for all sums due as wages and compensation if our client is not paid in full for his wages and compensation earned through his last day of work in March of 2019. The total amount of those earned but unpaid wages and compensation, including interest and before deductions for taxes is $1,211,206.47, which includes a prorated share of the $700,000 incentive bonus ("Third Incentive Bonus"), due to the termination of Mr. Lulloff that occurred between the "milestones" of the $500,000 incentive bonus ("Second Incentive Bonus") and Third Incentive Bonus consistent with the terms of the Employment Agreement.

We therefore demand payment in the sum of $1,211,206.47, which is inclusive of a prorated share of the Third Incentive Bonus and 5% interest (less applicable taxes), on or before September 30, 2021, or I will file a claim for those wages under the Illinois Wage Payment and Collection Act and seek attorney's fees as allowed under 70 ILCS § 225/1.

EXHIBIT E

FILED DATE: 11/5/2021 4:39 PM   2021L010851

If you have any questions or would like to discuss this matter further, please do not hesitate to reach out to the undersigned.

Very truly yours,

Joseph L Ponsetto
Attorney for Jeffrey Ehlers

Cc:  C T Corporation System (as Registered Agent)
     208 S. LaSalle, Suite 814
     Chicago, IL 60604
     (via UPS/FedEx)

EXHIBIT E